# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**UNITED STATES OF AMERICA**

V.                    NO. 4:03CR00278 SWW-1

**STEVEN E. JORDAN**

### ORDER DENYING MOTION FOR RELEASE ON BOND

Defendant Steven E. Jordan ("Jordan") appeared by videoconference with counsel for a hearing on his motion seeking bond pursuant to 18 U.S.C. §3142(i).[1] Jordan requested temporary release from the Jefferson County Detention Facility ("Jefferson County"), claiming he is more likely to contract COVID-19 there because the facility does not require inmates to practice social distancing, does not provide masks to inmates, and does not provide hand sanitizer or daily disinfectants to inmates. Jordan also claims to suffer from serious medical conditions that make him more likely to suffer serious consequences should he contract COVID-19.[2] Doc. No. 180.

---

[1] Jordan appeared by videoconference after waiving his right to be physically present in Court, and consented to allow the Court to conduct his hearing via videoconference.

[2] Jordan appeared for an Initial Appearance hearing on the government's motion seeking revocation of his supervised release on September 24, 2019. He waived his rights to a detention hearing at that time but reserved the right to request such a hearing at a later date. Doc. Nos. 56, 58. Jordan later requested a bond hearing and one was held on November 27, 2019. Following witness testimony and argument from the parties, the Court found that the defendant was a danger to the community and should remain in

Title 18, United States Code, §3142(i) provides that the court may permit the temporary release of an individual in custody "to the extent the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." Jordan is 44 years old and weighs 245 pounds. His medical records indicate that in May 2019, he weighed 252. Jordan is 5 feet, 9 inches tall. He claims he is considered obese by CDC guidelines. He suffers from Crohn's disease[3] and high blood pressure. He has been treated in the past for H-pylori.[4] Doc. No. 180 at 4. He claims that his Crohn's disease has worsened over time, and currently causes him to suffer from intolerable stomach pain on a daily basis. Additionally, Jordan complains that his diet at Jefferson County consists of high sodium processed foods that are worsening his health. He takes a number of medications every day, including several for high blood

---

custody. Text entry no. 67. A hearing on the superseding motion to revoke supervised release is set for July 28, 2021. Doc. No. 71. Jordan is also a defendant in pending criminal case no. 4:19-cr-530-DPM, and is charged with conspiracy to distribute and possess with intent to distribute methamphetamine, crack cocaine, and cocaine; possession with intent to distribute methamphetamine; and use of a telephone in a conspiracy to distribute and possess with intent to distribute a controlled substance. The crimes alleged in 4:19-cr-530 are the basis for the government's petition to revoke Jordan's supervised release, and trial on those charges is scheduled for July 26, 2021.

[3] "Crohn's disease is a type of inflammatory bowel disease (IBD). It causes inflammation of [the] digestive tract, which can lead to abdominal pain, severe diarrhea, fatigue, weight loss and malnutrition." See www.mayoclinic.org.

[4] Helicobacter pylori is a common bacteria that infects the stomach. It often infects the stomach during childhood. It can lead to peptic ulcers and gastritis. It is believed to infect more than half of the world's adult population, many of whom never have

pressure. To manage his Crohn's disease, Jordan is prescribed Sulfasalazine, docusate sodium (a stool softener), and prednisone, which he takes daily. Jordan states that some of the medications he takes for Crohn's disease are immunosuppressants, and therefore could affect his body's ability to fight the COVID-19 virus should he contract it. He also claims that Jefferson County's failure to observe COVID-19 precautions make him more likely to contract the virus. Jordan claims his medical situation and the conditions of his confinement constitute compelling reasons that make necessary his temporary release to his sister's home pursuant to 18 U.S.C. §3142(i). The Court has reviewed the medical records produced by Jordan under seal, and has also reviewed the pretrial report and testimony from Jordan's bond hearing held November 27, 2019.

The Court is guided by the well-reasoned order entered by Magistrate Judge Jerome Kearney in *United States v. Lunnie*, Case No. 4:19-cr-180 KGB, filed April 2, 2020, Doc. No. 35. In that order, Judge Kearney denied an inmate's request for temporary release from custody due to the COVID-19 pandemic after considering a number of factors, finding those factors did not constitute a compelling reason for release. He stated:

> The court is mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents. But, in that context, a defendant should not be entitled to release under § 3142(i) based solely on generalized COVID-19 fears

---

symptoms. It is generally treated with antibiotics. *See* www.mayoclinic.org.

and speculation. Rather, the court must make an individualized determination as to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary under § 3142(i). In making that determination, the undersigned will evaluate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary."

*Id.* at 3 (quoting *United States v. Clark*, 448 F. Supp. 3d 1152, 1156-57 (D. Kan. 2020)). Based on the evidence before this Court and analysis of the factors cited above, the Court finds that Jordan has not established a compelling reason that necessitates Jordan's temporary release.

### 1. Original Grounds for Pretrial Detention

Jordan was indicted in the Eastern District of Arkansas in November 2003 and charged with distribution of more than 5 grams of crack cocaine. He pleaded guilty and was sentenced on June 17, 2004 to 188 months imprisonment to run concurrent to an undischarged term he was serving in the Arkansas Department of Correction, followed by 4 years of supervised release. After he was released from prison, his supervision commenced on April 13, 2018. His supervision expires on April 12, 2022.

The United States filed a petition for warrant for offender under supervision in June of 2019 (Doc. No. 51), as well as a superseding petition in November of 2019 (Doc. No. 65), claiming that Jordan violated his conditions of release. Specifically, the superseding petition alleged that in a search conducted by the FBI and Arkansas State Police at Jordan's house on May 30, 2019, law enforcement seized methamphetamine, scales, four cell phones, and cash totaling $3,071. It also asserted that Jordan was charged in the Eastern District of Arkansas in a multi-defendant indictment on September 5, 2019. *See* Doc. No. 5, case no. 4:19-cr-530.

In that indictment, Jordan was charged with conspiracy to distribute and possess with intent to distribute methamphetamine, crack cocaine, and cocaine; possession with intent to distribute methamphetamine; and use of a telephone in a conspiracy to distribute and possess with intent to distribute a controlled substance. The indictment alleges in Count 1 that the amount of controlled substances involved in the conspiracy attributable to Jordan is 50 grams or more of methamphetamine actual, and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine. *Id.* at 2. In Count 10, Jordan is charged with possessing more than 50 grams of methamphetamine actual with intent to distribute. *Id.* at 6. Counts 1 and 10 expose Jordan to statutory penalties including at least 10 years and up to life in prison. The telephone charge

exposes Jordan to statutory penalties including 4 years in prison. Trial in case no. 4:19-cr-530 is currently set for July 26, 2021.

A bond hearing was held on November 27, 2019 in this case to determine if Jordan should be released pending a hearing on the government's motion to revoke his supervised release. Jordan had the burden of establishing by clear and convincing evidence that he would not flee or pose a danger to any other person or to the community. Fed. R. Crim. P. 32.1(a)(6). The Court found, after hearing testimony and argument of counsel, that Jordan failed to meet his burden of proof, and that no conditions or combination of conditions could reasonably assure the safety of the community if Jordan was released. Doc. No. 67.

**History of drug abuse.** In making its determination, the Court considered, with no objection by counsel, information contained in the pretrial services report produced by the U.S. Pretrial Services Office. That report documents Jordan's history of drug use. He used marijuana and cocaine routinely until his 2003 conviction, and attended substance abuse treatment programs in both the Arkansas Department of Corrections and the Bureau of Prisons.

**Criminal History.** Jordan has a significant history of arrests and convictions for violent crimes. His first arrest was in 1992, at age 15, and he was charged with robbery and theft of property. He was convicted and sentenced to 5 years in prison. In June of 1994, at age 17, Jordan was arrested and charged with

criminal attempt, murder 2nd degree, battery 1st degree, and possession of a firearm by certain persons. The disposition of those charges was unknown. Jordan was next arrested in June of 1995, at age 18, and charged with aggravated assault and terroristic threatening. He was convicted and sentenced to 120 months in prison. He was paroled in June of 2000, absconded from supervision in October of 2002, and revoked in October of 2003. Jordan was convicted at age 19 of possession of firearm by certain person and terroristic act in 1997 and was sentenced to 120 months in prison. He was paroled in June of 2000, absconded, and revoked. He was charged with terroristic threatening 2nd degree in March of 2002, convicted, and sentenced to 1 year in prison. He was charged with terroristic threatening and aggravated assault in April of 2003, and those charges were *nolle prossed*. He was charged in September of 2003 with residential burglary and theft of property, convicted, and sentenced to 360 months in prison on the burglary charge and 240 months in prison on the theft charge to run consecutively.

Jordan was also arrested and charged with manufacture, etc. controlled substance, schedule IV, V, less than 200 grams in 1996 (*nolle prossed*), misdemeanor driving while intoxicated in 2001 (convicted), misdemeanor obstructing governmental operations in 2001 (convicted), and 2 misdemeanor failure to appear charges in 2002 (convicted).

The charges and convictions identified above culminated in the federal charge in this case in November of 2003 of distribution of more than 5 grams of crack cocaine, a conviction, and a sentence of 188 months in prison and 4 years of supervised release. Jordan's supervision commenced on April 13, 2018. And on May 30, 2019, he was arrested following the above-described search conducted by the FBI and Arkansas State Police at his house in which law enforcement seized methamphetamine, scales, four cell phones, and cash totaling $3,071, resulting in the indictment pending in case no. 4:19-cr-530.

In addition to the criminal history outlined above, the Court, in ruling on Jordan's motion for release in November of 2019, also considered that Jordan received 26 disciplinary violations while incarcerated in the Arkansas Department of Corrections, including assault and battery disciplinaries.

**History/Characteristics of Jordan.** The Court heard testimony at the November 2019 bond hearing that Jordan has lived in his community for many years and has a number of family ties there. Jordan's sister, Tiffany Jordan, testified that she was willing to serve as a third party custodian for him, and the Court agrees she would be an appropriate third party custodian if Jordan were released. The Court also heard testimony from Anthony Stephens and Dustin Bonnema with Goodwill of Arkansas. After his release from federal custody, Jordan participated in Goodwill's 16 week reentry program and was then hired as

an employee providing janitorial services at a number of Goodwill stores at night. As an employee, Jordan was trusted with alarm codes for each store he worked. Both witnesses were impressed with Jordan's participation, calling him respectful, keen on family, hard-working, a very good employee, proactive, trustworthy, and willing to do work no one else was interested in. Jordan held this job until his arrest on May 30, 2019. He also spoke to prisoners, with the encouragement of Stephens.

Selina Ripa, Jordan's supervising probation officer, testified that she supervised Jordan between his release from federal prison in April 2018 and his arrest on May 30, 2019. While on release, Jordan never tested positive for drugs and was never found to possess guns. Officer Ripa testified that Jordan's May 30, 2019 arrest was the first major violation of his supervised release.

**Nature/Circumstances of Offense.** The evidence in issue arose, according to a proffer by the United States, when a Title III wiretap recorded calls with Jordan concerning his involvement in the receipt and distribution of methamphetamine. In addition to evidence of drug distribution, the wiretap also recorded a call between Jordan and the subject of the wiretap about Jordan collecting a debt from another individual. In that call, Jordan stated he would shoot that individual in the face. The recorded calls were made while Jordan was on supervised release and working for Goodwill. They resulted in the search of

Jordan's house and arrest on May 30, 2019, and the confiscation of methamphetamine, packaging, scales, cell phones, and cash. In making a ruling on Jordan's request for bond, the Court considered that the claimed offense involved drugs and a threat of violence, as well as the fact that Jordan's involvement was captured by a Title III wiretap.

Based on consideration of the above evidence, the Court found that there were no conditions or combination of conditions that would reasonably assure the safety of the community. No evidence has been presented to change the Court's finding in this regard. This finding weighs in favor of denying Jordan's motion for release.

### 2. Specificity of Jordan's COVID-19 Concerns

Jordan claims that he is vulnerable because he is 44 years old, obese, suffers from Crohn's disease and high blood pressure, and has been treated in the past for H-pylori. The medical records he produced confirm his diagnoses of Crohn's disease, high blood pressure, and a history of H-pylori. He claims that his Crohn's disease has progressed to the point that it currently causes him to suffer from intolerable stomach pain on a daily basis, and that his diet at Jefferson County consists of high sodium processed foods that are worsening his health. Some of Jordan's daily medications are immunosuppressants, and therefore could affect his body's ability to fight the COVID-19 virus should he contract it. Jordan testified

also that when he was a federal inmate, he was housed at the Federal Medical Center in Ft. Worth, Texas, which is a federal prison for male inmates with special medical and mental health needs.

Jordan also claims that Jefferson County's failure to observe COVID-19 precautions make him more likely to contract the virus. He testified, without dispute, that Jefferson County does not provide masks, sanitizer, or daily disinfectant, and that it is impossible to maintain social distance in his pod of 20 or more inmates. In his motion for release, Jordan cites national statistics that there have been more than 300,000 reported inmate cases of COVID-19 and over 1,800 inmate deaths within detention centers. No evidence was produced about the number of inmates at Jefferson County during the relevant period versus the number of inmates there who contracted COVID-19. And no evidence was produced to establish that Jordan has contracted COVID-19 while he has been in Jefferson County's custody.

Jordan claims that the two immunosuppressant drugs he takes daily, including a steroid, make his body less able to fight an infection such as COVID-19. The Court finds that this position generally makes sense. However, no evidence was produced regarding the extent and significance of immune suppression Jordan's medications might cause in relation to fighting COVID-19.

The Court accepts and finds that COVID-19 poses a heightened threat in jails and prisons. The Court also accepts for purposes of its decision that Jefferson County has not provided inmates with masks, hand sanitizer, or daily disinfectants, and houses Jordan in a pod with at least 20 other inmates. Additionally, the Court accepts that Jordan's obesity, medical conditions, and medications put him at greater risk of complications and a more severe outcome should he contract the virus. These factors weigh in favor of release.

### 3. The Extent to Which the Proposed Release Plan is Tailored to Mitigate or Exacerbate Other COVID-19 Risks to Jordan

Jordan proposes to be released to live with his sister, who he states is not in a high risk category. He states he will comply with strict conditions, including home incarceration, should he be released. Jordan's sister is employed with the postal service in Little Rock. No evidence was provided regarding the nature of the proposed third-party custodian's job, what her exposure is to the public in general, or whether individuals with whom she works are at high risk. There was no evidence of what individuals frequent the home, whether they are at high risk, whether they have had contact with persons who have COVID-19 or been exposed to it, or what COVID-19 precautions are being taken by these individuals. All things considered, however, the Court finds that the proposed release plan is tailored to mitigate COVID-19 risks to Jordan.

4. **The Likelihood that Jordan's Proposed Release Plan Would Increase COVID-19 Risks to Others**

In *Lunnie*, Judge Kearney stated that a consideration of this factor should take into account the likelihood that the defendant will violate conditions of release, and therefore increase COVID-19 risk to others. *See Lunnie*, Case No. 4:19-cr-180 KGB, filed April 2, 2020, Doc. No. 35 page 10. Releasing Jordan with location monitoring and on home incarceration does not guarantee his compliance with conditions of release.[5] And if he violates such conditions, he would place himself at risk of infection as well as law enforcement officers, pretrial services officers, and others with whom he comes into contact.

The Court is not confident that Jordan will comply with any conditions of release. He has repeatedly failed to comply with conditions of release in the past. In fact, the revocation motion pending in this matter claims that he failed to comply with conditions of his supervised release by distributing methamphetamine. He has a significant criminal history, one which began when he was 15 years old. That history includes violence and distribution of drugs and

---

[5] "While the location monitoring that he proposed may offer useful information about where he is, it provides little useful information about what he is doing, and the ready accessibility of smart phones and digital communication devices would make it all too easy for him to resume his involvement (directly or through confederates) in the distribution of controlled substances without detection." *Id.* (quoting *United States v. Martin*, 2020 WL 1274857, at *4 (D. Md. March 17, 2020)).

resulted in substantial prison sentences. Time in prison has not served to deter Jordan from engaging in further criminal activity. Additionally, Jordan is currently facing serious drug charges that will result in significant prison time if he is found guilty. The Court has no reasonable basis to find that Jordan, who has not been law-abiding for most of his life, will decide to comply with the law now. The Court recognizes the testimony of Anthony Stephens and Dustin Bonnema from Goodwill that Jordan has been an exemplary employee with a desire to improve himself. The Court also recognizes that until his arrest in May of 2019, Jordan had not been charged with any significant violations of his supervised release. What concerns the Court, though, is evidence that while Jordan was presenting himself to his employer and his supervising officer as successfully navigating his release, he was at the same time involved in the claimed illegal activity that resulted in a new indictment.

If Jordan is released to home incarceration with location monitoring, pretrial services employees will be required to install and monitor such technology, placing those individuals at greater risk of contracting and spreading COVID-19. If he violates conditions, law enforcement officers will be required to locate him, take him into custody, and return him to custody, placing them at greater risk of contracting and spreading COVID-19. Then when he is returned to custody, the detention facility employees and inmates will also be placed at greater risk of

contracting and spreading COVID-19. These circumstances weigh in favor of denying Jordan's motion for temporary release.

## Conclusion

In weighing the factors discussed above, the Court finds that Jordan has not met his burden of proving that compelling reasons exist to necessitate his temporary release under the circumstances. Thus, the Court denies the motion for temporary release.

IT IS SO ORDERED this 8th day of February, 2021.

_____
PATRICIA S. HARRIS
UNITED STATES MAGISTRATE JUDGE